**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY FALONEY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **WACHOVIA BANK, N.A.,** | : | **No. 07-CV-1455** |
| | : | |

**MEMORANDUM OPINION**

TIMOTHY R. RICE                                                    June 25, 2008
U.S. MAGISTRATE JUDGE

     In this case, a contested document's status as privileged depends on when in-house legal counsel functions as a legal advisor as opposed to a business advisor, and whether the communication was confidential.  Whether the document was prepared in anticipation of litigation determines if the document also is protected by the work-product doctrine.  For the following reasons I find the document privileged and protected by the work product doctrine.

<u>BACKGROUND</u>

     Plaintiffs Mary Faloney, James Whitt, and Anitra Whitt ("Faloney") have sued defendant Wachovia Bank, N.A. ("Wachovia") on behalf of a proposed class of victims, alleging Wachovia conspired with telemarketing companies and a payment processor to violate United States law. Faloney claims Wachovia was involved in a scheme, which obtained victims' bank account information by deceit through telephone calls by telemarketers, and provided a "portal to the victims' accounts."  <u>See</u> Plaintiff's Memorandum in Support of Their Motion for Certification of this Action as a Class Action at 1, <u>Faloney v. Wachovia Bank, N.A.</u>, No. 07-1455 (E.D. Pa. filed

Dec. 27, 2007) [hereinafter Plaintiff's Memorandum].[1]  Faloney alleges Wachovia also collected

millions of dollars in fees from the checks returned by the victims' banks and collected interest

on the fraud proceeds.  Id.

I.     Discovery History

        The contested document is an electronic mail (email) message dated April 14, 2006

drafted by a Wachovia corporate litigation attorney summarizing a conference call relating to the

conduct Faloney challenges in her suit.  A copy of this email inadvertently was included in

Wachovia's December 4, 2007 production of documents.  On December 6, 2007 Wachovia

requested the document be returned, claiming it was protected by the attorney-client privilege

and work product doctrine.

        I held an evidentiary hearing on April 30, 2008 and May 2, 2008 to assess the merits of

Wachovia's claim.  Wachovia employees Michele McGuire, Timothy Brady, and Curtis Vance

Beck testified concerning the email, conference call, and surrounding events.  McGuire is a vice

president and assistant general counsel in the bank's litigation department, see  4/30/08

Transcript of Record at 20-21, Faloney v. Wachovia, 07-1455 (E.D. Pa.); Brady is a manager of

an investigative team in the loss management group, see 5/2/08 Transcript of Record at 20-21,

Faloney v. Wachovia, 07-1455 (E.D. Pa.); and Beck is a senior vice president, assistant general

counsel and a manager in the litigation group, see id. at 130.  I credit the testimony of all three

witnesses based on their demeanor and candor.  In addition, their testimony was corroborated by

the documents, including letters and subpoenas received by Wachovia from government

_____

        [1]  The mechanics of the alleged scheme are outlined in United States v. Payment
Processing Center, 435 F. Supp. 2d 462 (E.D. Pa. 2006) and 461 F. Supp. 2d 319 (E.D. Pa.
2006).

investigators and regulators, <u>see</u> Defendant's Hearing Ex. 1-7, <u>Faloney v. Wachovia</u>, 07-1455

(E.D. Pa. filed Apr. 30, 2008) [hereinafter Defendant's Ex.], and by an April 6, 2006 email[2]

submitted for in camera review on April 24, 2008 and filed under seal outlining the process that

led to the creation of the challenged email.

II.    <u>Facts</u>

     On February 22, 2006, the United States Attorney launched a dual civil investigation and

criminal probe of fraud involving telemarketers and the entity that processed the underlying

consumer transactions through accounts at Wachovia.  Federal agents served Wachovia with a

Temporary Restraining Order which froze about ten million dollars in the accounts of Wachovia

customer Payment Processing Center, LLC ("PPC"), and with a subpoena to produce documents

in connection with a criminal grand jury investigation of PPC.  <u>See</u> Defendant's Ex. 1;

Defendant's Ex. 2.  On February 24, 2006, Wachovia received a letter from the United States

Attorney's Office directing Wachovia to preserve all documents and information related to PPC.

<u>See</u> Defendant's Ex. 3.  On February 28, 2006, the United States Attorney served Wachovia with

a civil subpoena for documents relating to PPC and relating to compensation Wachovia paid its

executive, known as the "relationship manager," responsible for the PPC account.  <u>See</u>

Defendant's Ex. 4.  On March 7, 2006, an amended civil subpoena was served on Wachovia

seeking documents related to other Wachovia customers, who also were payment processors.

<u>See</u> Defendant's Ex 5.

     The government's probe of Wachovia's role in the fraud scheme soon escalated on

---

    [2]  The email was from Michele McGuire to Linda Mill and Time Brady and copied to Bob
Hampson, Camilla McDevitt, Elisa Barbis, and Margaret Clark.

multiple fronts.  On March 21, 2006, Assistant United States Attorney Joel Sweet sent a letter to

the Honorable John R. Padova, United States District Court Judge in the Eastern District of

Pennsylvania, who was assigned the PPC litigation.  See Defendant's Ex. 7.  Sweet's letter cited

evidence suggesting Wachovia was "deeply involved" in PPC's illegal activities.  See id.  On

March 24, 2006, the Office of the Comptroller of the Currency ("OCC"), the bank's regulator,

contacted Wachovia to request documents relating to Wachovia's relationship with PPC.  See

4/30/08 Transcript of Record at 40-41, Faloney v. Wachovia, 07-1455 (E.D. Pa.).  Wachovia

produced these documents on March 29, 2006.  Id.  In addition, in March 2006 Wachovia filed a

motion seeking relief from the temporary restraining order.  See 4/30/08 Transcript of Record at

28.

Contemporaneous with this series of events, McGuire said she and her supervisor,

Margaret Clark, recommended to colleagues in Wachovia's legal division that Wachovia

examine its relationships with payment processors and customers involved in telemarketing

activity to avoid similar litigation in the future.  See 4/30/08 Transcript of Record at 43-44

(discussions began when Wachovia received the temporary restraining order and letter from the

government, and Wachovia filed its motion).  McGuire contacted Wachovia's loss management

division and requested information on customers similar to PPC and on possible losses in

connection with those customers.  See id.  McGuire said she perceived a need to discuss how to

respond to the litigation and assess Wachovia's legal exposure if it continued to do business with

payment processors and telemarketers.  See id. at 44.

On April 14, 2006, Wachovia officials conferred by telephone.  The participants were

McGuire, Beck, Camilla McDevitt, Clark, Gene Katz, Elisa Barbis, Bob Hampson, Linda Mill,

and Brady.  McGuire, Beck, McDevitt, and Clark were attorneys responsible for litigation

involving Wachovia; Katz was a Wachovia attorney and liaison to the OCC; Barbis and

Hampson were attorneys responsible for advising Wachovia's business groups; and Mill and

Brady were managers in Wachovia's operations department handling loss management and

fraud.  See 4/30/08 Transcript of Record at 24, 27, 38-39, 41.

The email in question summarized the April 14, 2006 conference call.  See id. at 44.  The

email noted the participants had discussed customer accounts, acknowledged input from Mill and

Brady, and that the participants decided "where to draw the line" on payment processor

customers.  The email also listed five rationale to support a recommended future course of

action.[3]  Neither the legal division attorneys nor the loss management division officials

possessed authority to establish bank policy.  See 5/2/08 Transcript of Record at 51, 69, Faloney

v. Wachovia, 07-1455 (E.D. Pa.).  As a result, the call participants styled their conclusion as a

recommended policy change to senior officers of the bank.[4]  See id. at 148.

## DISCUSSION

Faloney claims the email is not protected by the attorney-client privilege because no

confidential communication occurred and the advice was business advice, not legal advice.

See Plaintiff's Memorandum at 1.  Faloney claims the work-product doctrine does not apply

because the email was not written in anticipation of litigation.  See id. at 2.  Wachovia alleges the

---

[3]  Discussion of a document submitted for in camera review is "necessarily limited."  In re
Ford Motor Co., 110 F.3d 954, 966 n.11 (3d Cir. 1997).  Revealing too much content would
undermine the purpose of the in camera review.  See id. Therefore, I shall reveal only the content
necessary to produce a reasoned opinion that can be reviewed.  See id.  Counsel for Faloney is
not hampered by this limitation because of the inadvertent disclosure.  See id.

[4]  No evidence exists to establish whether Wachovia implemented the recommendation.

email's purpose was to summarize a conference call and formulate legal advice concerning a bank-wide policy on Wachovia's relationships with certain customers.  See Wachovia Bank, N.A.'s Post-Hearing Memorandum of Law on the Applicability of the Attorney-Client Privilege and Work Product Doctrine to Communications of Wachovia Corporate Counsel at 1, Faloney v. Wachovia Bank, N.A., 07-1455 (E.D. Pa. filed May 16, 2008) [hereinafter Defendant's Memorandum].  It claims the conference call occurred only after the in-house lawyers gathered information in the month prior to the call and that the call's objective was to craft legal advice to the bank.  See id.

II.      Attorney-Client Privilege

      The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance."[5]  Watchel v. Health Net, Inc., 482 F.3d 225, 230-31 (3d Cir. 2007) (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients." Watchel, 482 F.3d at 231 (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co., 449 U.S at 390.

      The privilege is "founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of

---

[5]  "The privilege only protects the disclosure of communications; it does not protect disclosure of the underlying facts."  Upjohn Co. v. United States, 449 U.S. 383, 685 (1981).

disclosure." Westinghouse Elec. Corp. v. Republic of Phillippines, 951 F.2d 1414, 1424 (3d Cir. 1991) (quoting Hunt v. Blackburn, 128 U.S. 464, 470 (1888)).  The communication "is not, in and of itself, the purpose of the privilege; rather, it only protects the free flow of information because it promotes compliance with law and aids administration of justice." In re Teleglobe Communications Corp., 493 F.3d 345, 360-61 (3d Cir. 2007).

Communications made both by a client and an attorney are privileged if the communications are for the purpose of securing legal advice.  See In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (citing Restatement of the Law Governing Lawyers §§ 118, 120 (Proposed Final Draft No. 1 1996)); United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980).  Communications from an attorney are privileged for two reasons.  Amerada Hess Corp., 619 F.2d at 986 (citing United States v. Bartone, 400 F.2d 459, 461 (6th Cir. 1978)). First, it is necessary to prevent "the use of an attorney's advice to support inferences as to content of confidential communications."  Id.  Second, and of particular importance here, "independent of the content of any client communication, legal advice given to the client should remain confidential."  Id.

Nevertheless, the privilege obstructs the truth-finding process, and should be "applied only where necessary to achieve its purpose."  Wachtel, 482 F.3d at 231; accord Westinghouse Elec. Corp., 951 F.2d at 1423.  Because the privilege promotes the "dissemination of sound legal advice," it applies only where the advice is legal in nature, and not where the lawyer provides non-legal business advice.  Watchel, 482 F.3d at 231 (citing 8 Wigmore at § 2303).  In addition, the privilege applies only to communications made in confidence because "a client who speaks openly or in the presence of a third party needs no promise of confidentiality to induce a

disclosure." Watchel, 482 F.3d at 231 (8 Wigmore at § 2312).

        A.        The Advice Provided was Legal Advice

In-house counsel performs a dual role of legal advisor and business advisor. Kramer v. Raymond Corp., 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) (Pollak, J.). Communications by in-house counsel are privileged only where the "communication's primary purpose is to gain or provide legal assistance." Id. at *1. "Business communications are not protected merely because they are directed to an attorney, and communications at meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence." Id. The corporation "'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.'" Id. (quoting Aamco Transmissions, Inc. v. Marino, 1991 WL 193502, at *3 (E.D. Pa. Sept. 24, 1991 (Waldman, J.)); see also In re Grand Jury Matter, 147 F.R.D. 82, 85-86 (E.D. Pa. Dec. 13, 1992) (Broderick, J.) (documents not protected because communications were from an expert consultant and made to achieve regulatory compliance, not to assist the law firm in providing legal advice).

The interplay of in-house counsel's dual roles is illustrated in In re Ford Motor Co., 110 F.3d 954 (3d Cir. 1997). After Ford identified safety concerns about one of the automobiles, its general counsel examined the legal implications and proposed a course of action to address the concerns. Id. at 966. Ford convened a meeting to discuss this proposal. Id. The United States Court of Appeals for the Third Circuit found the minutes of the meeting protected by the attorney-client privilege. Id. The court reasoned the communications were privileged because Ford had concerns about a particular product, Ford's lawyer examined the legal implications of these concerns and proposed a course of action, and the meeting was called, in part, to discuss

this proposal.  Id.  Therefore, the meeting's purpose was to secure attorney advice.  Id.  Although the decision included consideration of profit and loss issues, economics, marketing, and public relations, the court concluded "it was infused with legal concerns and was reached only after securing legal advice."  Id.

The contested email contains legal advice.[6]  As in In re Ford Motor Co., Wachovia lawyers had concerns about Wachovia's legal exposure from the bank's dealings with payment processors, and the lawyers drafted a plan to address these concerns.  See id. at 966.  Although other officials within Wachovia had discussed similar concerns in the past, and business issues such as profit and loss, economics, marketing, and public relations were inherent in the analysis, the email discussed legal concerns and proposed legal advice.  See id.  When viewed in the context that Wachovia's lawyers initiated the meetings after investigative inquiries from the government, the email communication involved a legal decision, not a business decision.[7]  Although the circumstances giving rise to the conference are not expressly stated in the email,

---

[6]  An exception to attorney-client privilege exists if the party shows "the client used the lawyer's services to further a continuing or future crime or fraud."  In re Grand Jury Investigation, 445 F.3d 266, 274 (3d Cir. 2006).  Faloney suggests if the document contains legal advice it is discoverable under the crime-fraud exception to the privilege because the advice was used to further wrongdoing.  See Plaintiff's Memorandum at 16 n.8 (citing ¶4 of email).  Faloney's view seriously misreads the email.  McGuire explained that the call participants had rejected another potential course of action.  The challenged paragraph (¶ 4) explains why the suggestion was not in Wachovia's best interest; it does not, as Faloney contends, advocate a course of inaction that would promote additional telemarketing fraud or allow Wachovia to continue to profit from potentially illegal practices.  See 4/30/08 Transcript of Record at 46.

[7]  In theory, business officers also could have reached a similar policy conclusion had they confronted the issue on their own and without the looming pressure of government prosecutors and regulators.  The email's contents, however, cannot be fairly assessed outside the unique context that led to its creation.  See Howes v. Medical Components, Inc., 698 F. Supp. 574, 581 (E.D. Pa. Sept. 21, 1988) (Huyett, J.) (document's protection under attorney-client privilege determined on case-by-case basis).

McGuire and Beck had a reasonable and credible explanation for initiating legal discussions within the bank.  See 4/30/2008 Transcript of Record at 43-44; 5/2/08 Transcript of Record at 144.  Their testimony, and the April 6, 2006 email submitted for in camera review, established legal concerns prompted the telephone conference.  See 4/30/2008 Transcript of Record at 43-44; 5/2/08 Transcript of Record at 144.

     B.     The Communication was Confidential

A communication is confidential "if 'not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services.'" United States v. Moscony, 927 F.2d 742, 752 (3d Cir. 1991).  "The ultimate key to determining confidentiality is intent."  Id.  In Moscony, the Third Circuit found communication regarding the party's office procedures and policies of failing to forward mortgage company endorsements, and failing to report commissions made to the IRS, confidential because the office procedures were "at the heart of the investigation" and the communications were intended to facilitate the rendition of legal services.  Id.

Faloney claims Wachovia failed to establish Wachovia employees made any confidential disclosures to in-house counsel because the witnesses did not describe the information imparted to counsel.  See Plaintiff's Memorandum at 10.  The information concerned Wachovia's experiences with a customer similar to PPC and Wachovia's closing of that account.  See 5/2/2008 Transcript of record at 147.  It consisted of internal bank data and bank practices.  See id. at 147-48.  Although Brady discussed the topic covered in the telephone conference with others within Wachovia, see 5/2/08 Transcript of Record at 102, and may not have labeled the information "confidential," see id., the information was not public knowledge.  Compare In re

U.S. Healthcare, Inc. Sec. Litig., 1989 WL 11068, at *2 n.2 (E.D. Pa. Feb. 8, 1989) (McGlynn, J.) (documents privileged because they contained confidential information not placed in the public domain) with Moscony, 927 F.2d at 752 (3d Cir. 1991) (information  intended to be made public, such as "information communicated by a client which he knew would be disclosed in legal documents," is not privileged (quoting Weinstein's Evidence ¶ 5039(a)(4)[01] at 503-39-40)).

Brady had communicated with Wachovia lawyers about the topic before the April 14, 2006 telephone conference, and knew the lawyers were seeking assistance in drafting a legal policy to deal with customers similar to PPC.  See 5/2/08 Transcript of Record at 68; April 6, 2006 email.  McGuire and Beck's testimony, and the email submitted for in camera review, establish Brady and Mill provided information in response to a request by Wachovia's lawyers for assistance in formulating a policy to deal with payment processors and customers engaged in telemarketing activity.  See 5/2/08 Transcript of Record at 148.  Therefore, Brady and Mill were aware the information they shared, which included information on Wachovia's customers, was intended for use by the attorneys to give legal advice.  Any legal advice provided based on that information is confidential.  See In re Ford Motor Co., 110 F.3d at 965 n.9.

The advice was intended for the lawyer's client, Wachovia, and was not for public dissemination.  See 5/2/08 Transcript of Record. at 148.  Even assuming Wachovia had a management structure that prevented immediate implementation of the policy, and the call participants could not establish a new bank policy, see 5/2/08 Transcript of Record at 51, 69, these facts would not obviate the privilege.  At the time the communication occurred, the email was privileged legal advice and was intended to be shared only with those in upper management

capable of altering policy to limit the bank's exposure to legal risks.  See Moscony, 972 F.2d at 752 (confidential where "not intended to be disclosed to third persons other than those to whom disclosure is  in furtherance of rendering legal advice").[8]

As the Court noted in Upjohn Co. v. United States, 449 U.S. 383 (1981), "in the corporate context" middle- and lower-level employees will often possess the relevant information required by corporate counsel to adequately "advise the client with respect to . . . actual or potential difficulties."  Upjohn Co., 449 U.S. at 391.  The Court found the communications from the employees protected, noting information from lower-level employees was required to supply a basis for legal advice concerning compliance with the law, "the communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order" to help the corporation obtain legal advice. Id. at 394.

---

[8]  Faloney alleges Beck's testimony regarding the call's purpose, i.e. to give legal advice to the bank, and not simply to Brady's loss management department, was incredible because "of the absence of any testimony or evidence that the email was discussed with anybody at any higher level at the bank after the call."  Faloney also claims Beck's testimony contradicted McGuire's testimony that the call's purpose was to give legal advice to Mill and Brady.  See Plaintiff's Memorandum at 8.  Although Beck said the advice would be given to the bank's decision-makers and did not provide evidence this actually occurred, he explained he was not involved with that process.  Regardless, whether the bank subsequently failed to act on the legal advice does not impact its status as a privileged communication.  See Prudential Ins. Co. of Am. v. Massaro, 2000 WL 1176541, at *10 (D.N.J. Aug. 11, 2000) (citing United States v. Jacobs, 117 F.2d 82, 88 (2d Cir. 1997)) (discussing the crime-fraud exception and noting the failure to heed advice does not disturb the privilege).

In addition, McGuire discussed not only providing legal advice to Mill and Brady, but also said the call was scheduled to discuss how "to respond to all this litigation" and discuss "the legal exposure and legal risks with customers similar to PPC," 5/2/08 Transcript of Record at 44, Faloney v. Wachovia Bank, N.A., No. 07-1455 (E.D. Pa.).  Her testimony is consistent with Beck's testimony that the call was arranged to discuss how to respond to the inquiries and assess the legal risk posed by payment processor customers.  See 5/2/08 Transcript of Record at 144.

Brady and Mill were the bank officials who could provide facts on Wachovia's dealings with payment processors and telemarketers. Wachovia's lawyers needed these facts to address the legal concerns raised by the government inquiries and the possible litigation Wachovia faced from the PPC matter. The conveyed information was within the scope of Brady's and Mill's employment. In addition, the lawyers request for information, the April 6, 2006 email submitted for in-camera review, as well as the testimony of McGuire and Beck, establish Mill and Brady knew legal counsel needed the conveyed information before recommending a change in bank policy. See 4/30/08 Record of Transcript at 44.[9]

    C.    <u>The Privilege is Consistent with the Policies Promoted by the Attorney-Client Privilege</u>

Finding the email privileged promotes free communication of information and legal advice between clients and attorneys. See <u>Westinghouse Elec. Corp.</u>, 951 F.2d at 1424. Promoting such candid exchanges helps ensure compliance with the law. If the privilege did not protect such communications, a client would be less willing to share information requested by attorneys whose goal is to avoid litigation and alter potentially illegal corporate conduct. See <u>Upjohn</u>, 449 U.S. at 391 (refusing to adopt a narrow test because it would discourage

---

[9] <u>U.S. ex rel. Parikh v. Premera Blue Cross</u>, 2006 WL 3733783 (W.D. Wash. Dec. 15, 2006) is distinguishable. In <u>Parikh</u>, the court rejected a privilege claim because the party failed to establish the employees were aware meetings with counsel were part of an investigation or of counsel's role as a representative of a legal department. <u>Parikh</u>, 2006 WL 3733783, at *7. The court reasoned <u>Upjohn</u> suggested the privilege applies only where the employee is aware the communication to counsel is being made to enable the corporation to obtain legal advice. <u>Id.</u> In addition, the court permitted the party to reopen the depositions to determine whether the participants "were informed: (1) that the particular meetings were conducted as part of a legal investigation by the corporation; and (2) that counsel attended the meetings as a representative of the legal department." <u>Id.</u> Here, the employees were aware the call participants were lawyers and the April 6, 2006 email establishes they also were aware the lawyers were crafting legal advice for Wachovia.

communication by employees to counsel).  When an attorney such as McGuire initiates an

internal process to curtail a misguided – and possibly unlawful – banking practice, her legal

advice must remain privileged.  See id. at 392 (refusing to adopt narrow test because attorney

must be able to formulate advice when client faces a legal problem).  Otherwise, in-house

counsel would be wary of engaging in a candid exchange to alter business decisions that may run

afoul of the law.  See id. (if privilege did not apply to communication between employees and in-

house counsel, it would limit efforts of corporate counsel to ensure compliance with the law).

Although such a communication may occasionally constitute pure business advice, and not legal

advice, that is not the case here.  Nor is this a situation in which counsel attempted to use her

status as an attorney to masquerade a pure business decision as a privileged legal communication.

See In re Grand Jury Matter, 147 F.R.D. at 85-86.

     D.    Wachovia Provided Sufficient Evidence to Establish Privilege

     Faloney also alleges Wachovia produced insufficient evidence to establish the email is

protected by the attorney-client privilege.  Plaintiff's Memorandum at 3-4, 24.  She relies on

Delco Wire & Cable, Inc. v. Weinberger, 109 F.R.D. 680 (E.D. Pa. 1986) (Lord, J.) and Kramer,

1992 WL 122856, at *2 to support this contention.  Id.

     In Delco Wire & Cable, Inc., the court found the contested documents not protected by

the attorney-client privilege because the defendants submitted no evidence to support the

attorney-client privilege.  109 F.R.D. at 688.  Defendants had relied only on assertions in their

brief and documents submitted for in camera review.  Id. at 688.  The court reasoned statements

in briefs cannot be treated as evidence and a document for in camera inspection cannot establish

all the privilege's elements.  Id.  Similarly, the court in Kramer, found documents not privileged

where the party supported the privilege of all documents with only an affidavit describing the

team's duties and the director's role.  The court found the "affidavit does not establish . . . that all

communications . . . are protected by the privilege, much less that the communications at issue

here are so protected."  1992 WL 122856, at *2.

Here, however, Wachovia offered evidence and testimony, subject to vigorous cross-

examination, to support its assertion of the privilege, along with additional documents submitted

for in camera review.  See Defendants Ex. 1-7; 4/30/08 Transcript of Record; 5/2/08 Transcript

of Record.  The evidence establishes Wachovia faced an aggressive government probe featuring

a suggestion by the lead prosecutor to the presiding judge that Wachovia was involved in illegal

activity.  See Defendant Exhibits 1-7.  It would be shocking if such an allegation did not draw

attention from in-house counsel.  Wachovia also offered evidence that the call's purpose was to

gather information about payment processors in light of the PPC litigation and to discuss a policy

the legal department would propose to address legal risks the bank faced from its dealings with

such customers.  See 4/30/2008 Transcript of Record at 44; 5/2/2008 Transcript of Record at

144.  On its face, the April 14, 2006 email could be construed, as Faloney maintains, as non-

confidential business advice.  However, in the context of the other evidence presented by

Wachovia, especially McGuire's testimony, the document contains privileged legal advice to

Wachovia officials.  Thus, Delco Wire & Cable, Inc. and Kramer are inapposite.

Contrary to Faloney's contention, Wise Investments, Inc. v. Bracy Contracting, 2002 WL

31955990, at *2-3 (E.D. Pa. Oct. 23, 2002) (Van Antwerpen, J.) does not support her claim that

without a specific request for advice, discussions between corporate employees and their counsel

are not protected.  See Plaintiff's Memorandum at 8.  In Wise Investments, Inc., the court found

the documents not privileged because the party's only evidence in support of the privilege was a cover letter to counsel stating the letter "will give . . . all of the information [the contractors] need" and requesting review of a draft letter and a response thereto.  <u>Wise Investments, Inc.</u>, 2002 WL 3195590, at *3.  Such language was insufficient to establish the attorney-client privilege.  <u>Id.</u>  The court noted the party "could have mentioned additional circumstances suggesting that the cover sheet did in fact request legal advice," but did not provide evidence beyond its pleadings, did not mark the document as privileged, and raised the privilege late.  <u>Id.</u> Therefore, "viewing all of the circumstances" of the case and in light of the privilege's narrow applicability, the court found the document was not privileged.  <u>Id.</u>

Although Wachovia presented no direct evidence its employees sought legal advice, that fact is immaterial.  Wachovia established the legal department's ongoing concern with Wachovia's exposure to an escalating federal probe.  <u>See</u> 5/2/08 Record of Transcript at 139-44. The email was marked as privileged.  <u>See</u> 4/30/08 Record of Transcript at 44.  The lawyers were working with bank employees to respond to prosecutorial and regulatory inquiries, as part of their responsibility to protect the bank from potential litigation.  <u>See</u> Transcript of Record.  Thus, evidence existed to support the attorney-client privilege.  <u>See</u> <u>Delco Wire & Cable, Inc.</u>, 109 F.R.D. at 688.

II.   <u>Work Product Doctrine</u>

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" unless otherwise discoverable or a party shows substantial need for the material.  Fed. R. Civ. Proc. 26(b)(3).  Protected work product includes "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative," which

16

is "afforded near absolute protection from discovery." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003) (quoting Fed. R. Civ. Proc. 26(b)(3) and In re Ford Motor Co., 110 F.3d at 962 n.7). Such information is discoverable "only upon a showing of rare and exceptional circumstances." In re Cendant Corp. Sec. Litig., 343 F.3d at 663. The party seeking the protection has the burden of proving the doctrine applies. Kramer, 1992 WL 122856, at *2 (citing Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982)).

The work product doctrine "is designed to protect material prepared by an attorney acting for his client in anticipation of litigation." United States v. Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir. 1990) (citing In re Grand Jury Proceedings, 604 F.2d 798, 801 (3d Cir. 1979)). The doctrine does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993) (quoting Fed. R. Civ. P. 26(b)(3) advisory committee note). The doctrine recognizes a lawyer must have a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." In re Student Finance Corp., 2006 WL 3484387, at *5 (E.D. Pa. Nov. 29, 2006) (McLaughlin, J.) (quoting Hickman v. Taylor, 329 U.S. 495, 511 (1947)).

A document is prepared in anticipation of litigation if "'the nature of the document and the factual situation in the particular case'" establishes "'the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Rockwell, 897 F.2d at 1266 (quoting In re Grand Jury Proceedings, 604 F.2d 798, 804 (3d Cir. 1979)). "[T]he preparer's anticipation of litigation must be objectively reasonable." Montgomery County v. MicroVote Corp., 175 F.3d 296, 305 (3d. Cir. 1999) (citing, 983 F.2d at 1260). This requires proof of "an

17

identifiable specific claim or impending litigation when the materials were prepared."

MicroVote Corp., 175 F.3d at 305 (citing Leonen v. Johns-Manville, 135 F.R.D. 94, 97 (D.N.J. 1990)).  A reasonable anticipation of litigation is not established by the mere fact litigation occurred, the party consulted or retained an attorney, undertook an investigation, or engaged in negotiations.  Id. (citing United States v. Ernstoff, 183 F.R.D. 148, 155 (D.N.J. 1998)).

Litigation need not be threatened before a document can be found prepared in anticipation of litigation.  Id. (citing Hydramar, Inc. v. General Dynamics Corp., 115 F.R.D. 147, 150 n.3 (E.D. Pa. 1986)).

Rule 26(b)(3) requires only "that the material be prepared in anticipation of some litigation, not necessarily in anticipation of the particular litigation."  In re Ford Motor Co., 110 F.3d at 967 (emphasis deleted).  Nevertheless, the work product doctrine applies only in related litigation.  See Nesselrotte v. Allegheny Energy, Inc., 242 F.R.D. 338, 341 (W.D. Pa. 2007); see also In re Grand Jury Proceedings,, 604 F.2d at 803-04; In re Ford Motor Co., 110 F.3d at 967 n.15.

Contrary to Faloney's contention, the email was prepared in anticipation of litigation. The telephone conference and email summarizing the conference arose in response to the Temporary Restraining Order, grand jury subpoenas, letter from the United States Attorney directing the production of documents, letter from Assistant United States Attorney Sweet to Judge Padova suggesting Wachovia may be involved in illegal activity, and the OCC's request for production of documents.  See 4/30/08 Transcript of Record 43-44.  Although the email does not mention the litigation in United States v. PPC, McGuire testified she initiated the call in response to the PPC litigation and government's interest in expanding its probe to include

Wachovia's conduct.  See id.  I credit her testimony as objectively reasonable given its significant documentary corroboration.  The telephone conference was held to discuss how Wachovia could avoid exposure to criminal and civil liability.  See MicroVote Corp., 175 F.3d at 305 (privileged where work was primarily to avoid or prepare for future litigation).

Moreover, the April 6, 2006 email submitted for in camera review suggests the telephone conference's  purpose was to discuss a potential policy to allow Wachovia to avoid similar civil and criminal liability issues in the future, and the call was promoted by the numerous inquiries and subpoenas sent by the United States government suggesting Wachovia's policy had exposed the bank to criminal and civil liability.  See Apr. 6, 2006 Email; Rockwell, 897 F.2d at 1266 (court must examine the nature of the document and the factual situation to determine whether it is created in anticipation of litigation).

Although not every document prepared when a party finds itself in a situation that may lead to litigation is covered by the work product doctrine, see Kramer, 1992 WL 122856, at *3, it applies where the party seeking the protection establishes "an identifiable specific claim or impending litigation when the materials were prepared," MicroVote Corp., 175 F.3d at 305.  In Kramer, the court rejected the company's work product claim.  Kramer, 1992 WL 122856, at *3.  The company "appear[ed] to take the position that because [the division] was headed by an attorney, and because part of its mission was to evaluate pending and potential product liability suits, all of the documents produced by the [division] are immune from discovery as work product."  Id.  The court reasoned the company's concern with safety and desire to avoid potential liability did not "extend immunity to all documents generated by that concern."  Id.  The court denied protection of the work product doctrine because the company did not

19

demonstrate the documents were "prepared in the expectation that particular litigation was substantially likely to occur."  Id.

In Martin v. Bally's Park Place Hotel and Casino, 983 F.2d 1252 (3d Cir. 1993), Bally's received a letter from the Occupational Safety and Health Administration ("OSHA") directing Bally's to investigate an employee's complaints about working conditions and make the necessary modifications within thirty (30) days.  The letter further stated that if Bally's failed to remedy the conditions, OSHA might conduct an inspection.  Id. at 1254.  After Bally's responded with results of its investigation, OSHA advised its inquiry remained ongoing because a Baily's employee maintained the illegal conditions persisted.  Id.  Bally's general counsel wrote an internal memorandum advising that Bally's hire a technical expert to investigate and prepare a report.  Id.  After OSHA requested a copy of the report, Bally's refused, claiming work product doctrine and attorney-client privilege.  Id.  OSHA issued a citation against Bally's for willful violation of OSHA's records access rule.  Id. at 1254-55.

An administrative law judge found the document not protected by the work product doctrine but the Commission reversed the decision.  Martin, 983 F.2d at 1255.  The Third Circuit affirmed, reasoning the correspondence and testimony revealed the report was commissioned in response to OSHA's inquiry, and because the company was concerned OSHA or the employees would bring suit.  Id. at 1261.  The court noted it was not a routine record because substantial evidence supported the conclusion that Bally's anticipated litigation, including OSHA's letters and the possibility of suit by Bally's employees, the internal memorandum cited the allegations raised by OSHA, and the correspondence and testimony established the report was created in response to the OSHA inquiry and concern OSHA or Bally's employees would bring suit.  Id.

20

Wachovia demonstrated the document was prepared in anticipation of litigation.  It was objectively reasonable for McGuire and the other Wachovia lawyers to prepare the email following the government's inquiries.  See Martin, 983 F.2d at 1254-55 (anticipation of litigation objectively reasonable where OSHA had an open inquiry).  Before the telephone conference and email, Wachovia received subpoenas, letters from the United States Attorney and the OCC requesting the production of documents, and a letter to Judge Padova from the United States Attorney stating the government believed Wachovia may have been involved in the PPC wrongdoing.  See 4/30/08 Transcript of Record at 43-44.  This confluence of government interest in Wachovia's internal banking practices created an objectively reasonable fear of litigation by Wachovia's counsel.  See Martin, 983 F.2d at 1254-55.  The testimony of McGuire and Beck establish Wachovia lawyers were concerned about the potential liability Wachovia now faced and hoped to find a way to prevent similar situations in the future.  See 4/30/08 Transcript of Record 43-44; 5/2/08 Transcript of Record at 134-35.  The email correspondence submitted for in camera review further establishes the April 14, 2006 email was created in anticipation of litigation because it provides an update of the PPC case and states the Wachovia lawyers hoped to set boundaries for their dealings with other payment processors.

Wachovia showed 'an identifiable specific claim or impending litigation."  See MicroVote Corp., 175 F.3d at 305 (citing Leonen v. Johns-Manville, 135 F.R.D. 94, 97 (D.N.J. Jul. 18, 1990)).  The document discusses strategy and thought processes, and sets forth the policy the lawyers will propose to Wachovia, as well as the reasons they believe the policy is in Wachovia's best interest.  See Defendant's Ex. 8 and Plaintiff's Ex. 1.  In addition, the suit commenced by Faloney is indirectly related to the government's PPC investigation and is based

in large part on evidence unearthed by Assistant United States Sweet's dogged pursuit of PPC, Wachovia, and the telemarketing industry.  See In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979) (documents prepared for civil administrative matter protected in the grand jury investigation of the same underlying subject matter).

Unlike the party in Kramer, Wachovia established the document was for particular litigation substantially likely to occur.  See Kramer 1992 WL 122856, at *3.  Similar to Martin, Wachovia had received documents from the government suggesting it may face a government probe of its dealings with PPC and similar customers.  See Martin, 983 F.2d at 1254.

Accordingly, the email was prepared in anticipation of litigation and is protected by the work-product doctrine.

An appropriate order follows.